UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,

            Plaintiff/Counter-Defendant,

-against-

RONALD A. BROW,

            Defendant/Counter-Plaintiff.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**01-CV-4797 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Pro se Defendant, Ronald A. Brow ("Brow"), brings counterclaims for breach of contract and violation of the Fair Credit Reporting Act ("FCRA") against Plaintiff, the United States of America. (Answer (Dkt. 4) at 2.) Plaintiff filed a motion for summary judgment on the counterclaims and provided the pro se Defendant with the requisite Local Rule 56.2 notice. (Pl.'s Mot. (Dkt. 48); Local Rule 56.2 Notice (Dkt. 48) at 7-10.) Brow filed an opposition supported by an affidavit. (Def.'s Opp'n & Aff. (Dkt. 53).)

    For the reasons stated below, Plaintiff's Motion for Summary Judgment is granted.

## I.    BACKGROUND

    In July 2001, Plaintiff filed a student loan debt enforcement action against Defendant. (Compl. (Dkt. 2).) On July 13, 2011, the court granted Plaintiff's motion for summary judgment against Defendant for his failure to pay his 1982-1983 student loans and awarded approximately $3,600 in principal and interest to the United States. (July 13, 2011, Mem. & Order (Dkt. 26).)

    On September 8, 2011, Defendant filed a motion for sanctions against Plaintiff for failure to file proper service. (Mot. for Sanctions (Dkt. 33).) On March 15, 2012, this court reviewed Defendant's objections to Judge Azrack's Report and Recommendation denying his motion for sanctions and concluded that, "the United States has followed Rule 4 of the Federal Rules of

Civil Procedure both in the manner of service and the proof of service."[1] (Mar. 15, 2012, Mem. & Order (Dkt. 42) at 6-7.)

In September 2001, Defendant answered Plaintiff's Complaint and alleged two counterclaims: violation of the FCRA and breach of contract. (Answer at 2.) On December 17, 2012, the court set the following briefing schedule for Plaintiff's motion to dismiss Defendant's counterclaims: Plaintiff was to serve its motion by January 18, 2013; Defendant was to serve his response by February 22, 2013; and Plaintiff was to serve its reply, if any, by March 1, 2013. (Dec. 17, 2012, Min. Entry.) Plaintiff, in fact, served a motion for summary judgment on Defendant on January 8, 2013, (Dkt. 48-5), and Defendant requested a thirty-day extension to file his response, which the court granted (Mar. 15, 2013, Order (Dkt. 47)). On October 7, 2013, the court again extended the deadline for Defendant to respond to Plaintiff's motion for summary judgment to November 8, 2013, and warned Defendant that a failure to file a response to Plaintiff's Motion for Summary Judgment by November 8, 2013, would result in an unopposed motion. (Oct. 7, 2013, Order (Dkt. 50).) On November 8, 2013, Defendant again asked for an extension of time to file his response to Plaintiff's Motion for Summary Judgment on his counterclaims, which the court denied. (Nov. 8, 2013, Mot. for Ext. (Dkt. 51); Nov. 22, 2013, Order (Dkt. 52).) Defendant filed his Motion to Oppose Plaintiff's Motion for Summary Judgment on November 29, 2013, which was accompanied by an affidavit consisting of six numbered paragraphs. (Def.'s Opp'n & Aff.) Despite their lateness, the court will consider both of these submissions.

---

1   In addition to the specific facts discussed herein, Defendant's Affidavit attests to several facts that contest whether proper service was achieved at the outset of the case. (See Def.'s Opp'n & Aff. ¶¶ 2, 4, 5, 7.) However, this court previously concluded that proper service of the Complaint was provided under Federal Rule of Civil Procedure 4 and will not revisit that ruling. (See Mar. 15, 2012, Mem. & Order at 6-7.)

## II.  LEGAL STANDARD

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 344, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).  A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, "the court must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).

The non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257.  "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)).

Where a plaintiff proceeds pro se, the court reads his papers "'liberally and interpret[s] them to raise the strongest arguments that they suggest.'" Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003)). However, the court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." Molina v. State of N.Y., 956 F. Supp. 257, 259 (E.D.N.Y. 1995).

3

III. DISCUSSION

A.   Fair Credit Reporting Act ("FCRA")

Defendant alleges that the United States and/or its agents violated his rights under the FCRA "through harassment and reporting of incorrect financial information to defendant creditors and/or potential creditors . . . [which] caus[ed] damage to defendant's good name, economic standing, business opportunities, and credit worthiness." (Answer at 2.) Defendant has not alleged which provision of the FCRA he relies upon to bring his claim. Further, Defendant does not provide any documentary evidence and does not reference any facts to support his claim in his Answer, his Motion to Oppose Summary Judgment, or his Affidavit in Support of Motion to Oppose Summary Judgment. Defendant does not even state what inaccurate financial information was reported to whom, how it was inaccurate, or when it was reported. The only reference to or support for this claim is in Defendant's Answer as quoted above, which, even when liberally construed, is a mere conclusory statement of a claim, and, as such, is dismissed.[2]

B.   Breach of Contract

Defendant alleges that Plaintiff's "breach of contract" has "damaged the defendant[']s good name[,] economic standing, business opportunities, credit worthiness and caused economic deprivation and emotional suffering to defendant." (Answer at 2.)

---

[2] Furthermore, Defendant would have to show that Plaintiff expressly waived its sovereign immunity in the text of the FCRA in order for this court to have subject-matter jurisdiction over the claim. See United States v. Bormes, 133 S.Ct. 12, 13 (2013) (holding that "[s]ince FCRA is a detailed remedial scheme, only *its own* text can determine whether the damages liability Congress crafted extends to the Federal Government."); see also Gilbert v. U.S. Dep't of Educ., No. 08-CV-6080, 2010 WL 3582945, at *4 (W.D. Ark. Sept. 7, 2010) (finding that the FCRA "does not contain an unequivocal and express waiver of sovereign immunity" and that "[a]ccordingly, the Court is without proper subject-matter jurisdiction, and dismissal is proper."); Stellick v. U.S. Dep't of Educ., No. 11-CV-0730, 2013 WL 673856, at *5 (D. Minn. Feb. 25, 2013) (finding that the FCRA does not waive sovereign immunity).

4

1.  Defendant's Argument Under 20 U.S.C. § 1087

In his opposition papers to the instant motion, Defendant alleges that he "has been a law enforcement officer for over twenty five years" and, as such, is entitled to a cancellation of at least 30 percent of his student loan principal and interest pursuant to 20 U.S.C. § 1087ee. (See Def.'s Opp'n & Aff. ¶ 6.) Defendant asserts that he requested such cancellation "on an ongoing basis and ha[s] not received a[n] accurate accounting of any monies owed." Id.

The provision cited by Defendant, 20 U.S.C. § 1087ee, entitled "Cancellation of Loans for Certain Public Service," is contained within the Higher Education Act, and governs the cancellation of Perkins loans. While Defendant does not allege that his loans are Perkins loans, the Certificate of Indebtedness, as contained in Plaintiff's Motion for Summary Judgment on Defendant's student loan debt states: "[t]he institution made the loan(s) under the Federally-funded National Direct Student Loan, now Perkins Student Loan, programs authorized under Title IV-E of the Higher Education Act of 1965. . . ." (Dkt. 23-2 at 12). Defendant is correct that 20 U.S.C. § 1087ee, along with its accompanying regulations, generally govern loan cancellation for law enforcement officers.[3] In the event of a loan's default, the borrower "[m]ay qualify for a loan cancellation for services performed *before* the date of acceleration" 34 C.F.R. § 674.52(c)(2)(i)[4] but "[c]annot qualify for a [loan] cancellation for services performed *on or after* the date of acceleration" 34 C.F.R. § 674.52(c)(2)(ii) (emphasis added). The record states that Defendant defaulted on his loans as of August 2, 1984, (Dkt. 23-2 at 12), but does not

---

[3] See 34 C.F.R. § 674.57(a)(2) ("An institution must cancel up to 100 percent of the outstanding loan balance on a Federal Perkins . . . loan made prior to November 29, 1990, for law enforcement or correction officer service performed on or after October 7, 1998, if the cancellation benefits provided under this section are not included in the terms of the borrower's promissory note."); 34 C.F.R. § 674.57(c)(2)(iii) ("Cancellation rates are . . . 30 percent of the original principal loan amount plus the interest on the unpaid balance accruing during the year of qualifying service, for the fifth year of full-time employment.").
[4] Notably, the regulations do not differentiate between the cancellation process applicable to law enforcement officer service performed between the date of loan default and the date of the acceleration and service performed when the loan is in good standing. See 34 C.F.R. § 674.52(c)(1).

indicate the date on which the loan was accelerated.[5] Without this date and given that Defendant does not provide the dates over which he performed his alleged twenty-five years of service, the court cannot conclude that Defendant did not perform any qualifying law enforcement service applicable to his claim of loan cancellation and, as such, will draw reasonable inferences in Defendant's favor regarding his potential to qualify for loan cancellation.

2. Procedural Prerequisites

In order for Defendant to bring a claim contesting whether his student loan should have been cancelled, he would state a claim under either the Administrative Procedure Act ("APA") or the Federal Tort Claims Act ("FTCA"). See, e.g., De La Mota v. U.S. Dep't of Educ., 412 F.3d 71, 77 (2d Cir. 2005) (finding a claim disputing the Department of Education's interpretation of 20 U.S.C. § 1087ee under the APA); Sanon v. Dep't of Educ., 453 F. App'x 28, 30 (2d Cir. 2011) (summary order) (ruling that a claim to recover student loan monies erroneously collected was untimely under the FTCA). In his papers, Defendant does not specify under which Act he is stating his claim; since Defendant is pro se, the court will generously construe his counterclaims and consider both types of claims.

In order to assert a claim disputing a denial of loan cancellation under the APA, 5 U.S.C. §§ 701 et seq., Defendant must follow the administrative procedures applicable to requesting such a loan discharge and, then, once he obtains a decision denying his Perkins loan cancellation,

---

[5] The court notes that, under 34 C.F.R. § 674.50(a), it appears that the acceleration of a defaulted loan occurs *prior* to the assignment of the loan to the United States Department of Education. Defendant's loan was assigned on April 19, 1991, according to the Certificate of Indebtedness. (Dkt. 23-2 at 12.) This fact, combined with the restriction that qualifying law enforcement officer service applicable to loan cancellation must have occurred *on or after* October 7, 1998, pursuant to 34 C.F.R. § 674.57(a)(2), makes it highly unlikely that Defendant qualifies for any loan cancellation due to his law enforcement officer service. However, several facts are not in the record before the court regarding the procedures followed in this case with respect to Defendant's defaulted loan, including how it was assigned and when it was accelerated. Further, Plaintiff's vague statement that "[t]he United States took over the loan after default [on] April 19, 1991, with the elimination of the statute of limitations" (Pl.'s Answer to Counterclaim (Dkt. 7) at 1) does not provide the necessary specificity required for this court to conclude that the procedures under 34 C.F.R. § 674.50(a) were followed.

6

he can challenge it. See De La Mota, 412 F.3d at 77; Nehorai v. U.S. Dep't of Educ. Direct Loan, No. 08-CV-920 (SLT), 2008 WL 1767072, at *1 (E.D.N.Y. Apr. 14, 2008). The administrative procedures prerequisite to this type of APA claim are as follows:

> [I]n order to qualify for cancellation of a Perkins Loan, the borrower shall submit to the institution to which the loan is owed, by the date that the institution establishes, both a written request for cancellation and any documentation required by the institution to demonstrate that the borrower meets the conditions for the cancellation requested.

Shabtai v. U.S. Dep't of Educ., No. 02-CV-8437 (LAP), 2003 WL 21983025, at *7 (S.D.N.Y. Aug. 20, 2003) (quoting 34 C.F.R. § 674.52(a)).

Likewise, a failure to first pursue a similar administrative process will result in the dismissal of a claim brought under the FTCA. Id. Here, the administrative process requires that "the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied." Id. at *6 (citing 28 U.S.C. § 2675(a)).

Assuming that Defendant has performed qualifying law enforcement service entitling him to partially or entirely cancel his loans under 20 U.S.C. § 1087ee, this fact alone is not enough to preclude summary judgment as Defendant has not alleged that he has complied with the regulations governing Perkins loan cancellation or the procedures prerequisite to filing an FTCA claim. Defendant's general statement that he "requested on an ongoing basis" for his loans to be cancelled and that he has not received an accurate accounting are insufficient to allege a claim under the APA challenging a final decision or one under the FTCA requiring administrative exhaustion. Further, during the court's review of the twelve-year record of the case, it has not found any assertions, documentation, or other evidence to support the fact that any requests were made to obtain a cancellation of the loans, that Defendant was denied such a cancellation, or that any tort claim was administratively filed arising out of a disputed cancellation. The first and

only instance the court finds in the record of Defendant's claim that his loans should be cancelled due to his service as a law enforcement officer is found in a single paragraph of the affidavit opposing the instant motion. (See Def.'s Opp'n & Aff. ¶ 6.) There are no facts, even when read in the light most favorable to Defendant, that could support a finding that Defendant properly complied with the respective administrative procedures; as such, this claim is dismissed.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment on Defendant's counterclaims is GRANTED. As there are no claims remaining, the Clerk of Court is respectfully directed to close the case.

    SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York  
       March 4, 2014

NICHOLAS G. GARAUFIS  
United States District Judge